IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TADEH DAVTIAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC., CHECKR, INC.,<br><br>　　　　　Defendants. | Case No. 24-cv-5195-CRB<br><br>**ORDER GRANTING MOTIONS TO COMPEL ARBITRATION** |

　　　　Plaintiff Tadeh Davtian, individually and on behalf of a putative class, alleges that Defendants Uber Technologies, Inc. and Checkr, Inc. failed to obtain his authorization and to make disclosures required to run a background check under the Fair Credit Reporting Act (FCRA) and Investigative Consumer Reporting Agencies Act (ICRAA). Compl. (dkt. 1-2) ¶¶ 1, 19, 22, 35, 38. Checkr removed the action to federal court[1] and Defendants both moved to compel arbitration and dismiss Davtian's class claims. See Uber Mot. (dkt. 12); Checkr Mot. (dkt. 20); see also Uber Reply (dkt. 21); Checkr Reply (dkt. 24). Davtian does not dispute that he entered into valid arbitration agreements with Defendants; rather, he argues that his claims are not covered by the agreements. Uber Opp'n (dkt. 19) at 1, 7; Checkr Opp'n (dkt. 23) at 1, 7.

　　　　The Court concludes that, pursuant to Civil Local Rule 7-1(b), Defendants' motions are suitable for resolution without oral argument, and VACATES the hearing currently set for November 15, 2024. As explained below, the Court GRANTS Defendants' motions to

---

[1] The Court has federal question jurisdiction because Davtian alleges violations of the FCRA. Checkr Notice of Removal (dkt. 1) ¶ 9.

1  compel arbitration, GRANTS Defendants' request to dismiss Davtian's class claims, and
2  STAYS the suit pending arbitration.

## I.  BACKGROUND

### 1.  Parties

Uber's records indicate that Davtian, a California resident, first created an account to drive for Uber in 2014.  Chinchilla Decl. (dkt. 13) ¶ 13.  Davtian allegedly stopped driving for Uber in October 2022 due to injuries sustained in a traffic accident.  Uber Opp'n at 1; Checkr Opp'n at 1.

Uber and Checkr are both Delaware corporations headquartered in California. Compl. ¶¶ 8–9.  Uber operates an app-based platform that connects consumers with drivers offering transportation services.  Uber Mot. at 11 (citing Chinchilla Decl. ¶ 4).  To access the platform, prospective drivers must create an account on Uber's Driver App, enter into certain agreements with Uber, and agree to any revisions Uber makes to the agreements. Chinchilla Decl. ¶¶ 4–5, 10.

Checkr is a consumer reporting agency that provides background check and screening services.  Compl. ¶ 27; Fong Decl. (dkt. 20-2) ¶ 3.  Checkr prepares background reports for Uber on candidates seeking to provide transportation services on Uber's platform.  Checkr Mot. at 3 (citing Fong Decl. ¶ 3).  Candidates can view their background report in Checkr's online Candidate Portal.  Id.  To access the Candidate Portal, a candidate must agree to Checkr's Terms of Service.  Id. at 10 (citing Fong Decl. ¶¶ 7–8).

### 2.  Uber and Checkr Arbitration Agreements

Most recently, Davtian agreed to Uber's January 2022 Platform Access Agreement (2022 Uber PAA), which enabled him to provide transportation services on Uber's platform.[2]  Uber Mot. at 12 (citing Chinchilla Decl. Ex. 6); Uber Opp'n at 1.  Davtian also

---

[2] According to Uber's records, Davtian also entered into separate agreements to provide delivery services (as opposed to transportation services) on Uber's platform.  Uber Mot. at 11–12 (explaining that Uber operates a platform connecting consumers with providers offering to deliver meals, groceries, and other products and requires providers to enter into separate agreements to access that platform) (citing Chinchilla Decl. ¶¶ 5, 15, Ex. 7–9). Because Davtian's papers focus solely on his provision of transportation services on

2

agreed to Checkr's December 2022 Terms of Service (2022 Checkr TOS),[3] which enabled him to access Checkr's online Candidate Portal and view his background report. Checkr Mot. at 3 (citing Fong Decl. ¶ 3). Both the 2022 Uber PAA and 2022 Checkr TOS included an arbitration provision governed by the Federal Arbitration Act (FAA). See Chinchilla Decl. Ex. 6, § 13.1(a) (as to 2022 Uber PAA); Fong Decl. Ex. 2, § 16.A., 14.A. (as to 2022 Checkr TOS).

### a. 2022 Uber PAA

The 2022 Uber PAA included the following arbitration agreement:

> 13.1. **How This Arbitration Provision Applies**.
>
> (a) Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with us or relationship with any of our agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries, or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates. . . .
>
> (c) Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes between you and us, or between you and any other entity or individual, arising out of or related to your . . . use of an account to use our Platform and Driver App as a driver, . . . background checks, . . . your contractual relationship with us or the termination of that relationship[,] . . . the nature of your relationship with us (including, but not limited to, any claim that you are our employee), . . . and claims arising under the . . . Fair Credit Reporting Act, . . . and all other federal, state or local statutory, common law and legal claims . . . arising out of or relating to your relationship with us or the termination of that relationship.

Chinchilla Decl. Ex. 6, §§ 13.1(a), 13.1(c) (emphasis in original). The arbitration provision also contained class and representative action waivers:

---

Uber's platform and Davtian does not dispute that the 2022 Uber PAA is the most recent agreement that he entered to provide those services, see Uber Opp'n at 4, the Court limits its focus to that agreement for the purposes of this order.

[3] Although the 2022 Checkr TOS lists an effective date of December 2020, Checkr asserts, and Davtian does not dispute, that the correct effective date is December 2022. See Fong Decl. ¶ 4, Ex. 1, Ex. 2; Checkr Opp'n at 1.

3

> 13.4. **Class Action Waiver.**
>
> (a) **This Arbitration Provision affects your ability to participate in class, collective, coordinated, or consolidated actions.** Both Uber and you agree that any and all disputes or claims between the parties shall be resolved only in individual arbitration and not on a class, collective, coordinated, or consolidated basis on behalf of others.
>
> 13.5. **Representative Action Waiver.**
>
> (a) **This Arbitration Provision affects your ability to participate in representative actions.** To the maximum extent provided by law, both Uber and you agree that any and all disputes or claims between the parties shall be resolved only in individual arbitration, and not on a representative basis.

Id. Ex. 6, §§ 13.4(a), 13.5(a) (emphasis in original). Finally, the 2022 Uber PAA included a delegation provision giving the arbitrator exclusive authority to determine the enforceability of the arbitration agreement (but not the class action waiver):

> 13.3. **Governing Rules, Starting The Arbitration, And Selecting the Arbitrator**.
>
> (j) Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Provision, including without limitation any claim that all or part of this Arbitration Provision is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues. . . . However, only a court of competent jurisdiction, and not an arbitrator, shall have exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver and/or Representative Action Waiver—including, but not limited to, any claim that all or part of the Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, illegal, void, or voidable, or that a breach of either such Waiver has occurred.

Id. Ex. 6, § 13.3(j).

### b.    2022 Checkr TOS

The 2022 Checkr TOS included the following preamble:

> **IMPORTANT NOTICE: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS UNLESS YOU OPT OUT, AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW. PLEASE READ CAREFULLY.**

Fong Decl. Ex. 2 (emphasis in original).  Its arbitration provision provided that:

> Other than the exceptions in Section 14.D.,[4] You and Checkr agree that any disagreement, claim, or controversy arising out of or relating in any way to these Terms (including its enforcement, breach, performance, interpretation, validity, or termination), or Your access to and/or use of the Services, or the provision of content, services, and/or technology on or through the Services (hereinafter, "Claims"), shall be resolved by final and binding arbitration to the fullest extent allowed by law.

Id. Ex. 2, § 14.B. (emphasis added).  The 2022 Checkr TOS defined "Services" in the preamble as follows:

> [Y]our access to and use of the services, including those available on and through [Checkr's] Site and other websites offered by Checkr, its affiliates and partners, including but not limited to: obtaining, delivering, and managing background reports and related documentation; obtaining status information regarding background reports; Checkr's processes for generating background reports and resolving potential inaccuracies; requesting a copy of your consumer file; and/or any disputes relating to your background check.

Id. Ex. 2.  The 2022 Checkr TOS also included a class action waiver:

> **Except as otherwise required under applicable law, You and Checkr agree to bring and resolve any Claims only on an individual basis, and not as a named-plaintiff or class member in any class or representative proceeding**. You and Checkr acknowledge and agree that we are each waiving the right to participate as a plaintiff or class member in any purported class action lawsuit, class-wide arbitration, or any other representative proceeding as to all Claims (hereinafter, "Class Action Waiver"). Further, the arbitrator may not consolidate more than one party's claims and may not preside over any class, consolidated, or representative proceeding unless you and Checkr agree otherwise in writing.

Id. Ex. 2, § 14.E. (emphasis in original).  Finally, the 2022 Checkr TOS contained a delegation clause giving the arbitrator exclusive authority to determine the enforceability of the arbitration provision (but not the class action waiver):

---

[4] Section 14.D. provides that claims (1) "demanding $10,000 or less brought on an individual basis" in small claims court and (2) seeking "provisional remedies, preliminary injunctions, and temporary restraining orders" are not covered by the arbitration provision. Fong Decl. Ex. 2, § 14.D.  Neither exception applies here.

5

**C. Delegation to Arbitrator**

If there is a disagreement about the arbitrability of any Claim (including questions about the scope, applicability, interpretation, validity, and enforceability of this arbitration agreement), You and Checkr agree that this threshold disagreement shall be delegated to the arbitrator (not a court) and that the arbitrator shall have initial authority to resolve such threshold disagreements.

**E. Class Action Waiver**

… Notwithstanding any other provisions of this arbitration agreement or the AAA Rules, specific disagreements about the scope, applicability, enforceability, revocability, or validity of this Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

Id. Ex. 2, §§ 14.C, 14.E. (emphasis in original).

### 3. FCRA and ICRAA Claims

Davtian alleges that, in October 2022, he was in a traffic accident while driving for Uber and has not driven for Uber since due to injuries sustained in the accident. Compl. ¶¶ 15–16; Davtian Decl. ¶¶ 4–6. Davtian filed a separate civil action against Uber related to the accident. Compl. ¶ 16; Davtian Decl. ¶ 7. More than a year after the October 2022 accident, Uber allegedly asked Checkr to run a background check on Davtian, allegedly so that Uber could "gather information" about Davtian related to the separate civil action. Id. ¶ 8; Compl. ¶ 18. Davtian, on behalf of himself and others similarly situated, claims that Checkr and Uber violated the FCRA and ICRAA by failing to obtain his authorization prior to running the background check on him or to provide him with a consumer report and summary of rights. Compl. ¶¶ 19, 35, 38. Both Defendants moved to compel arbitration and requested that the Court dismiss Davtian's class claims. See Uber Mot.; Checkr Mot.

## II. LEGAL STANDARD

Contracts "evidencing a transaction involving commerce" are subject to the FAA. See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 2). The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. "[A]ny party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration." Magana v. DoorDash, Inc., 343 F. Supp. 3d 891, 898 (N.D. Cal. 2018) (citing 9 U.S.C. §§ 3–4). When deciding whether to compel arbitration under the FAA, the court's role is limited to deciding "(1) whether a valid agreement to arbitrate exists and, if it does, (2) [arbitrability, i.e.,] whether the agreement encompasses the dispute at issue." Chiron, 207 F.3d at 1130.

## III. DISCUSSION

The Court first addresses (A) the issue of arbitrability, and then turns to (B) Defendants' request to dismiss Davtian's class claims, and (C) Defendants' stay request.

### A. Arbitrability

Davtian does not dispute the existence or validity of the arbitration provisions contained in the 2022 Uber PAA and 2022 Checkr TOS.[5] Uber Opp'n at 1; Checkr Opp'n at 1. Davtian instead argues that his claims are not covered by the arbitration provisions.[6] Uber Mot. at 2–9; Checkr Mot. at 2–10. Defendants counter that the Court should not

---

[5] Davtian's argument that the arbitration agreements expired when he allegedly stopped driving for Uber—well before Defendants allegedly violated background check laws—is not a challenge to the agreements' existence or validity. See Uber Opp'n at 1; 7–9; Checkr Opp'n at 1, 7–10; see also Optimum Prods. v. Home Box Off., 839 F. App'x 75, 77 (9th Cir. 2020) (dispute over whether arbitration agreement expired is distinct from the issue of its validity or existence).

[6] Relatedly, Davtian's argument that that the arbitration agreements are irrelevant because they allegedly expired before the challenged conduct occurred lacks merit. See Uber Opp'n at 1, 7–9; Checkr Opp'n at 1, 7–10. Expiration is an arbitrability challenge which, as explained below, the parties agreed to delegate to the arbitrator. See Nolde Bros. v. Local No. 358, Bakery & Confectionary Workers Union, AFL-CIO, 430 U.S. 243, 251 (1977) (whether a "dispute … clearly [arose] after [a] contract's expiration" or "the parties' obligations under their arbitration clause survived contract termination" are questions of arbitrability). The cases that Davtian cites to on this issue, see Uber Opp'n at 7–9; Checkr Opp'n at 7–10, are distinguishable not because they involved arbitration agreements without a survival clause, as Checkr and Uber argue. See Checkr Reply at 5–6; Uber Reply at 16. They are distinguishable because they involved arbitration agreements without a delegation clause, leaving the court to analyze the issue of contract expiration as one of arbitrability. See Just Film, Inc. v. Merch. Servs., Inc., No. C 10-1993 CW, 2011 WL 2433044, at *4–6 (N.D. Cal. June 13, 2011); Bueche v. Fid. Nat. Mgmt. Servs., LLC, No. 2:12-CV-1114-JAM-EFB, 2013 WL 3283508, at *2–5 (E.D. Cal. June 27, 2013); Hughes v. S.A.W. Ent., Ltd., No. 16-CV-03371-LB, 2019 WL 2060769, at *23–25 (N.D. Cal. May 9, 2019).

1    reach the issue of arbitrability because the parties agreed to delegate it to the arbitrator.

2    Uber Mot. at 18–20; Checkr Mot. at 7–8.  Defendants are correct as to the order of

3    operation in the Court's analysis: the issue of delegation precedes that of arbitrability.  See

4    Fli-Lo Falcon, LLC v. Amazon.com, Inc., 97 F.4th 1190, 1194 (9th Cir. 2024) ("When the

5    parties have 'clearly and unmistakably' delegated questions regarding arbitrability to the

6    arbitrator, the court need not conduct further inquiries beyond the existence of the

7    arbitration agreement.") (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68–70

8    (2010)).

### 1.     Governing Law

To determine who decides the question of arbitrability, the Court must first address the applicable law that governs the dispute.  Federal law governs the arbitrability question by default where the arbitration agreement expressly states that it is governed by the FAA.  See Brennan v. Opus Bank, 796 F.3d 1125, 1129 (9th Cir. 2015) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).  Here, both the 2022 Uber PAA and 2022 Checkr TOS do so.  See Chinchilla Decl. Ex. 6, § 13.1(a) ("This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq."); Fong Decl. Ex. 2, § 14.A. ("You and Checkr mutually agree to … binding and final arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq.").  Moreover, the parties "have not clearly and unmistakably designated that nonfederal arbitrability law applies."  See Brennan, 796 F.3d at 1129 (citation omitted).  Accordingly, federal arbitrability law governs this arbitration dispute.  See id.

### 2.     Clear and Unmistakable Delegation

The Court must next determine whether, under federal arbitrability law, the delegation provisions in the 2022 Uber PAA and 2022 Checkr TOS "clearly and unmistakably" delegated to the arbitrator the question of whether Davtian's individual claims are arbitrable.  See id. at 1132–34 (applying federal arbitrability law to issue of delegation); Fli-Lo Falcon, 97 F.4th at 1194 (courts analyze issue of delegation before that of arbitrability).  Defendants argue that they did.  Uber Mot. at 15, 18–19 (citing

8

1   Chinchilla Decl. Ex. 6, § 13.1(b) (delegation clause in 2022 Uber PAA));[7] Checkr Mot. at

2   7–9 (citing Fong Decl. Ex. 2, § 14.C. (same in 2022 Checkr TOS)).  Davtian does not

3   address the issue of delegation in his papers at all, let alone respond to Defendants'

4   arguments.  See Uber Opp'n; Checkr Opp'n.

5         "A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all."  See Caremark, LLC v. Chickasaw Nation, 43 F.4th 1021, 1029 (9th Cir. 2022) (citing Rent-A-Ctr., 561 U.S. at 68–69).  A court "must [] resolve any challenges directed specifically to the enforceability of the delegation clause" and determine whether there is "'clear and unmistakable' evidence that 'the parties agreed to arbitrate arbitrability.'"  Id. 1029–30 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  Clear and unmistakable evidence can be a "a course of conduct demonstrating assent . . . or . . . an express agreement."  Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011) (omissions in text).  Silence or ambiguity must be construed in favor of the court deciding the issue of arbitrability.  First Options, 514 U.S. at 944–45 (citation omitted).

      Davtian does not challenge—let alone specifically challenge—the delegation clauses here, and the clauses are neither silent nor ambiguous as to who should decide the issue of arbitrability.  The 2022 Uber PAA clearly provided that an arbitrator should decide "any threshold arbitrability issues" and "any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of [the] Arbitration Provision."  Chinchilla Decl. Ex. 6, § 13.3(j).  Similarly, the 2022 Checkr TOS provided that an arbitrator should resolve any threshold arbitrability disagreements, "including question about the scope, applicability, interpretation, validity, and enforceability of th[e] arbitration

---

[7] The Court assumes that Uber intended to cite to the delegation clause in the 2022 Uber PAA, see Chinchilla Decl. Ex. 6, § 13.1(b), rather than the one in the 2014 Software License and Online Services Agreement, id. Ex. 3, § 13.1(b), in section IV.B. of its motion.  See Uber Mot. at 18–19 (discussing delegation clause in the "2022 Arbitration Provision").

9

agreement[]." Fong Decl. Ex. 2 § 14.C.

The Ninth Circuit and this Court have held that delegation provisions virtually identical to those at issue here clearly and unmistakably delegated the question of arbitrability to the arbitrator. See Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1207, 1208–10 (9th Cir. 2016) (delegation provision required that "disputes includ[ing] without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including enforceability, revocability or validity of the Arbitration Provision" be resolved by arbitrator); Kamath v. Coinbase, Inc., No. 23-CV-03533-CRB, 2024 WL 950163, at *2, *6–7 (N.D. Cal. Mar. 5, 2024) (delegation provision required that "disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement" be resolved by arbitrator).

Accordingly, the Court holds that the parties here clearly and unmistakably delegated the issue of arbitrability—i.e., "all arguments going to the scope or enforceability of the arbitration provision"[8]—to an arbitrator. See Caremark, 43 F.4th at 1029–30 (citing Rent-A-Ctr., 561 U.S. at 71–72).

The Court GRANTS Defendants' motion to compel arbitration as to Davtian's individual claims.

### B. Class Action Waiver

Defendants next argue that this Court should dismiss Davtian's class claims because he agreed to arbitrate his claims on an individual basis only. Uber Mot. at 9, 15 (citing Chinchilla Decl. Ex. 6. § 13.3(j) (class action waiver in 2022 Uber PAA)); Checkr Mot. at 5–7 (citing Fong Decl. Ex. 2 § 14.E. (same as to 2022 Checkr TOS)). The class action waivers here provide that the Court should decide their validity. See Chinchilla Decl. Ex.

---

[8] As explained, Davtian's arguments that the arbitration provisions in the 2022 Uber PAA and 2022 Checkr TOS "should not bind [him]" because they allegedly expired are also for the arbitrator to decide. See Uber Opp'n at 9; Checkr Opp'n at 10; see also Nolde Bros., 430 U.S. at 251 (whether "the parties' obligations under their arbitration clause survived contract termination" is question of arbitrability).

6. § 13.3(j) (as to 2022 Uber PAA); see also Fong Decl. Ex. 2 § 14.E. (as to 2022 Checkr TOS).  Where there is no challenge to the existence of an arbitration agreement, courts must "enforce [it] according to [its] terms—including terms providing for individualized proceedings." Epic Sys. Corp. v. Lewis, 584 U.S. 497, 502, 509–10 (2018); see also O'Connor v. Uber Techs., Inc., 904 F.3d 1087 (9th Cir. 2018) (reversing district court's class certification orders where plaintiffs failed to challenge the enforceability of class action waivers in their arbitration agreement with Uber).  Davtian does not contest the existence or enforceability of either the arbitration agreements or class action waivers here. See Uber Opp'n; Checkr Opp'n.

Accordingly, the Court GRANTS Defendants' motion to dismiss Davtian's class claims.

### C. Stay

Finally, Defendants ask the Court to stay this action pending completion of arbitration proceedings.  Uber Mot. at 25; Checkr Mot. at 13.  "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceedings." Smith v. Spizzirri, 601 U.S. 472, 472, 478 (2024) (citing 9 U.S.C. § 3 (a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement")).

Accordingly, the Court STAYS these proceedings pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions to compel arbitration as to Davtian's individual claims, GRANTS Defendants' request to dismiss Davtian's class claims, and STAYS this action pending arbitration.

**IT IS SO ORDERED.**

Dated: November 4, 2024

CHARLES R. BREYER
United States District Judge